UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| BENAY RAIA; and JOCLYN DASH,<br><br>       Plaintiffs,<br>  v.<br><br>DOHERTY ENTERPRISES, INC.; and APPLE FOOD SERVICE OF NEW YORK, LLC<br><br>       Defendants. | Civil Action No.<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs BENAY RAIA ("Raia"); and JOCLYN DASH ("Dash") (collectively, "Plaintiffs"), by and through their attorneys, VALLI KANE & VAGNINI LLP, bring this action for damages and other legal and equitable relief from DOHERTY ENTERPRISES, INC. ("Doherty"); and APPLE FOOD SERVICE OF LONG ISLAND, LLC ("Apple") (collectively, "Defendants"), for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C §§ 2000e *et seq.* ("Title VII"); the New York State Human Rights Law ("NYSHRL"); and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1. Throughout their employment as servers at the Applebee's Neighborhood Grill & Bar™ located at 1710 Hempstead Turnpike, Elmont, New York 11003 ("Applebee's"), Plaintiffs were subjected to a workplace that condoned sexual harassment by co-workers and management. Not only were the Plaintiffs' repeated complaints ignored, but Plaintiffs were subjected to unlawful retaliation when they complained.

2. In particular, Plaintiffs were subjected to sexual harassment through repeated and inappropriate sexual comments, unlawful touching and threats to their jobs if they complained.

3. Plaintiffs used the proper channels to report the sexual harassment to which they were subjected. Defendants failed to take any corrective action.

4. When Plaintiffs complained to management and human resources, Defendants reacted by unlawfully retaliating against them. Ultimately, both Plaintiffs were wrongfully terminated in retaliation for their complaints.

5. In filing this lawsuit, Plaintiffs seek justice for the discrimination, harassment and retaliation that marred their employment at Applebee's. Plaintiffs seek all remedies the law allows. Crucially, Plaintiffs also seek injunctive relief including training and monitoring, so that no future employees are subjected to a workplace permeated by sexual harassment.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief: (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) under 42 U.S.C §§ 2000e *et seq.*

7. The Court's supplemental jurisdiction is invoked to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 42 U.S.C §§ 2000e *et seq.*, in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is

also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain facilities, conduct business and reside in this district.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

9. Plaintiffs have timely filed complaints of discrimination, harassment, and retaliation with the Equal Employment Opportunity Commission ("EEOC").

10. In July 2017, the EEOC issued a determination and notice of conciliation in which the EEOC, after conducting an investigation, found that the Plaintiffs were subjected to sexual harassment and retaliation in violation of Title VII.

11. On September 8, 2017 the EEOC issued a Notice of Right to Sue. Accordingly, this complaint is timely; having been filed within ninety (90) days of Plaintiffs' receipt of Notice of their Right to Sue.

## PARTIES

12. Plaintiff Raia is a person who has been aggrieved by Defendants' actions. She is and has been, at all relevant times, a female citizen of the United States and is a resident of the State of New York.

13. Plaintiff Dash is a person who has been aggrieved by Defendants' actions. She is and has been, at all relevant times, a female citizen of the United State and is a resident of the State of New York.

14. Plaintiffs were most recently employed at Defendants' Elmont, New York location located at 1710 Hempstead Turnpike, Elmont, New York 11003.

15. Upon information and belief, Defendant Doherty is organized under the laws of the state of New Jersey and has its principal place of business in Allendale, New Jersey.

16. Defendant Doherty transacted and continues to transact business in New York by owning and operating multiple restaurants within Nassau County, New York and employing persons during relevant time period.

17. Defendant Doherty employs more than twenty (20) employees.

18. Defendant Doherty has at all relevant times been an employer covered by Title VII and the NYSHRL.

19. Upon information and belief, Defendant Apple is organized under the laws of the state of New York and has its principal place of business in New York.

20. Defendant Apple transacted and continues to transact business in New York by owning and operating multiple restaurants within Nassau County, New York and employing persons during relevant time period.

21. Defendant Apple employs more than twenty (20) employees.

22. Defendant Apple has at all relevant times been an employer covered by Title VII and the NYSHRL.

23. Upon information and belief, Defendant Apple is a wholly owned limited liability company of Defendant Doherty.

24. Defendant Doherty and Defendant Apple share the same headquarters, officers, members, employees, etc.

25. Defendants jointly employed Plaintiffs by employing or acting in the interest of the employer towards Plaintiffs, jointly or severally, including without limitation, by controlling and directing the terms and conditions of their employment and compensation.

## STATEMENT OF THE FACTS

I. Facts Common to All Plaintiffs

26. Defendants own and operate several restaurants within the state of New York and within Nassau County, New York.

27. Particularly, Defendants are the franchisee(s) of the Applebee's Neighborhood Grill & Bar™ located at 1710 Hempstead Turnpike, Elmont, New York 11003.

28. Plaintiffs were employed by Defendants as servers at the Elmont location.

29. A servers' job duties included, among other things, taking food and drink orders, delivering the orders to the tables, and entering the food and drinks ordered into Defendants' "point of sale" system.

30. Plaintiffs were supervised by Applebee's male senior manager, Mr. Joseph Morreale ("Mr. Morreale").

31. Plaintiffs were also supervised by Applebee's general manager, Patricia Erskine ("Ms. Erskine").

32. Throughout Plaintiffs employment with Defendants, Ms. Melissa Scarpulla ("Ms. Scarpulla") was Defendants' Human Resources manager.

33. Plaintiffs were subjected to repeated sexual harassment and unwelcome touching by their co-workers and supervisor (Mr. Morreale) during their employment.

34. Under the Defendants' policy, an employee subjected to discrimination and/or harassment can report it by complaining to a supervisor and/or to human resources.

**Facts Specific to Plaintiff Raia**

35. In or around March 2014, Plaintiff Raia commenced her employment at Applebee's as a server for Defendants.

36. Throughout Plaintiff Raia's employment with Defendants, Mr. Morreale unwelcomely massaged her shoulders and neck.

5

37. Throughout Plaintiff Raia's employment with Defendants, Mr. Morreale sexually harassed Plaintiff Raia by pressing up against her while making crude sexual comments, including but not limited to "let's go in the back and you can blow me"

38. On several occasions, Mr. Morreale pressed himself up against Plaintiff Raia's buttocks while she was using a computer and whispered: "you're fucking hot."

39. On multiple occasions, Mr. Morreale unwelcomely approached Plaintiff Raia and with an open hand smacked her buttocks.

40. In or around February 2015, after a post-shift social gathering with a majority of Plaintiff Raia's coworkers, Mr. Morreale approached Plaintiffs Raia and Dash and told them to go home with him.

41. Throughout Plaintiff Raia's employment with Defendants, Mr. Morreale made comments to Plaintiff Raia's customers including, among others: "you better stop flirting with her" and "she's mine, back off."

42. On multiple occasions throughout the relevant time period, Plaintiff Raia requested that Mr. Morreale cease his verbal and physical sexual harassment. Mr. Morreale not only refused, he also threatened to terminate Plaintiff Raia if she complained about his unwelcomed conduct.

43. On multiple occasions throughout the relevant time period, Plaintiff Raia complained to Ms. Erskine about Mr. Morreale's unlawful touching and the harassing comments he made. Ms. Erskine also witnessed the complained-about conduct on several occasions. However, Ms. Erskine did not take any remedial action regarding Mr. Morreale's unwelcomed conduct.

44. Plaintiff Raia also requested, on multiple occasions, that Ms. Erskine switch her shifts so that she did not have to work with Mr. Morreale. Ms. Erskine denied the request because, she stated, Mr. Morreale was in charge of scheduling.

45. On multiple occasions throughout the relevant time period, Plaintiff Raia complained to Ms. Scarpulla, of the corporate Human Resources Department, about Mr. Morreale's unlawful touching and verbal sexual harassment. However, Defendants failed to take any remedial action regarding Mr. Morreale's unwelcomed conduct towards Plaintiff Raia.

46. In March 2015, Plaintiff Raia reported to Mr. Morreale that a co-worker grabbed her from behind and bit her back. Mr. Morreale failed to take any corrective action.

47. In April 2015, Plaintiff Raia was battered by a fellow co-worker, Elias (last name unknown), when he threw a ceramic condiment container at her head. Notably, when Plaintiff Raia complained to Mr. Morreale of this incident, he denied that it occurred until Plaintiff Raia insisted that he watch the video recording. After watching the video recording, Mr. Morreale reported the incident to Ms. Erskine, who merely requested that Elias "apologize" to Plaintiff Raia.

48. On or around May 8, 2015, Defendants fabricated allegations against Plaintiff Raia to justify her wrongful termination, which in actuality was retaliation for her opposition to Mr. Morreale's pervasive sexual harassment.

II. **Facts Specific to Plaintiff Dash**

49. In or around October 2014, Plaintiff Dash commenced her employment as a server for Defendants.

50. Throughout Plaintiff Dash's employment with Defendants, Mr. Morreale referred to Plaintiff Dash as "my girl" and made repeated sexually harassing comments to her such as: "your ass looks nice in those pants."

7

51. On one occasion, Mr. Morreale commented to the Company's cooks: "we are all going to run a train on [Plaintiff Dash]."

52. Throughout Plaintiff Dash's employment with Defendants, Mr. Morreale unwelcomely massaged her shoulders and neck.

53. Throughout Plaintiff Dash's employment with Defendants, Mr. Morreale unwelcomely pressed his body up against her body.

54. On multiple occasions, Mr. Morreale unwelcomely approached Plaintiff Dash and with an open hand smacked her buttocks.

55. On multiple occasions throughout the relevant time period, Mr. Morreale placed breadsticks between his legs and requested that Plaintiff Dash "suck it."

56. In or around February 2015, after a post-shift social gathering with a majority of Plaintiff Dash's coworkers, Mr. Morreale approached Plaintiffs Dash and Raia and requested that they go home with him.

57. On multiple occasions throughout the relevant time period, Plaintiff Dash requested that Mr. Morreale cease his unwelcomed touching and verbal sexual harassment. Mr. Morreale not only refused, he also threatened to terminate Plaintiff Dash if she complained about his unwelcomed conduct.

58. On multiple occasions throughout the relevant time period, Plaintiff Dash complained to Ms. Erskine about Mr. Morreale's unlawful touching of her and the verbal sexual harassment. However, Ms. Erskine did not take any remedial action in regards to Mr. Morreale's unwelcomed conduct towards Plaintiff Dash. Plaintiff Dash also requested, on multiple occasions, that Ms. Erskine switch her shifts so that she did not have to work with Mr. Morreale. Ms. Erskine denied the request because, as she stated, Mr. Morreale was in charge of scheduling.

59. In or around March 2015, Plaintiff Dash complained to Ms. Scarpulla, of the corporate Human Resources Department, about Mr. Morreale's unlawful touching and the sexual harassment. However, Defendants did not take any remedial action regarding Mr. Morreale's unwelcomed conduct towards Plaintiff Dash.

60. Upon discovering that Plaintiff Dash had complained to Ms. Scarpulla, Mr. Morreale stated to Plaintiff Dash: "if you want to call HR, be my guest. Nothing is going to happen to me." He then threatened Plaintiff Dash's employment by suggesting that she should be careful because he makes the schedule.

61. On or around April 21, 2015, Mr. Morreale stated to a customer that there was going to be a prettier and better waitress in the future. He further stated: "these bitches think by calling human resources they are going to get rid of me, they are never going to get rid of me."

62. On or around April 22, 2015, the General Manager falsely accused Plaintiff Dash of forging approximately $9.00 in credit card tips, despite the fact that a manager was required to "sign off" on all receipts each night. Without conducting an investigation to determine if there was any truth to these allegations, Plaintiff Dash was terminated.

63. This termination was a pretextual retaliatory response to Plaintiff Dash's repeated complaints about being sexually harassed.

64. As Plaintiff Dash was escorted from the Applebee's, Mr. Morreale approached her and stated: "it's sad you got fired, but now we can fuck around."

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C §§ 2000e *et seq.*
### (Hostile Work Environment)

9

65. Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

66. The conduct alleged herein violates Title VII as Defendants have engaged in the practice of discrimination and harassment against Plaintiffs on the basis of their gender.

67. Defendants' conduct was willful and was pervasive in that it lasted for the duration of the relevant time periods.

68. Defendants' conduct was in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C §§ 2000e *et seq.*

**AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C §§ 2000e *et seq.***
**(Retaliation)**

69. Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

70. Plaintiffs Raia and Dash engaged in protected activity by complaining to Mr. Morreale, Ms. Erskine, and Ms. Scarpulla about Mr. Morreale's repeated sexual harassment in the workplace.

71. Throughout their employment, using Defendants' proper channels, Plaintiffs Raia and Dash made complaints about the discriminatory and hostile treatment to which they were subjected.

72. Defendants were on notice of the sexual harassment by Morreale and failed to take any corrective action.

73. As a direct retaliatory result of Plaintiff Raia's protected activity, Defendants terminated Plaintiff Raia on May 8, 2015.

74. As a direct retaliatory result of Plaintiff Dash's protected activity, Defendants terminated Plaintiff Dash on April 22, 2015.

75. Defendant's conduct was in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C §§ 2000e *et seq.*

76. Plaintiffs' requests for relief are set forth below.

### AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
### The New York State Human Rights Law
### (Hostile Work Environment)

77. Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

78. The conduct alleged herein violates the NYSHRL as Defendants have engaged in the practice of discrimination and harassment against Plaintiffs on the basis of their gender.

79. Defendants' conduct was willful and was pervasive in that it lasted for the duration of the relevant time periods.

80. Defendants' conduct was in violation of the New York State Human Rights Law.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
### The New York State Human Rights Law
### (Retaliation)

81. Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

82. Plaintiff Raia engaged in protected activity by complaining to Mr. Morreale, Ms. Eskrine, and Ms. Scarpulla that Mr. Morreale's unwelcomed conduct, including his touching her and making sexualized, offensive comments toward her.

83. Plaintiff Dash engaged in protected activity by complaining to Mr. Morreale, Ms. Eskrine, and Ms. Scarpulla that Mr. Morreale's unwelcomed conduct, including his touching her and making sexualized, offensive comments toward her.

84. Throughout their employment, using Defendants' proper channels, Plaintiffs Raia and Dash made complaints about the discriminatory and hostile treatment to which they were subjected.

85. Defendants were on notice of the sexual harassment by Morreale and failed to take any corrective action.

86. As a direct retaliatory result of Plaintiff Raia's protected activity, Defendants terminated Plaintiff Raia on May 8, 2015.

87. As a direct retaliatory result of Plaintiff Dash's protected activity, Defendants terminated Plaintiff Dash on April 22, 2015.

88. Defendant's conduct was in violation of the New York State Human Rights Law.

89. Plaintiffs' requests for relief are set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for the following relief:

A. That the practices of the Defendants complained of herein be determined and adjudged to be in violation of the rights of the Plaintiffs under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the New York State Human Rights Law prohibiting discrimination, harassment, and retaliation in employment;

B. That judgment be entered in favor of Plaintiffs against Defendants for back pay (including interest or an appropriate inflation factor), front pay, benefits and all other amounts owed to Plaintiffs;

C. That Plaintiffs be awarded compensatory damages where available;

D. That Plaintiffs be awarded punitive damages;

E. That Plaintiffs be awarded pre and post judgment interest;

F. That the Court award Plaintiffs attorneys' fees and costs associated with this matter, including but not limited to expert fees' and costs;

G. That the Court retain jurisdiction over Defendants until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law;

Plaintiffs seek injunctive relief, including but not limited to:

H. Training on the subject of employment discrimination for all of Defendants' employees;

I. Diversity training for all managers conducted by reputable, independent outside vendors;

J. Supervisory discipline up to and including termination for any supervisor who engages in unlawful discrimination;

K. Active monitoring of the work areas to ensure compliance with discrimination policies;

L. Supervision by a Court-appointed monitor or by a federal agency to ensure that Defendants comply with all injunctive relief; and

Plaintiffs further demand that they be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this complaint.

Dated: December 5, 2017
       Garden City, New York

                              Respectfully submitted,

                              *s/ Sara Wyn Kane*
                              Sara Wyn Kane
                              Robert J. Valli, Jr.
                              Monica Hincken
                              Matthew L. Berman
                              **Valli Kane & Vagnini LLP**
                              600 Old Country Road, Suite 519
                              Garden City, New York 11530
                              (516) 203-7180 (phone)
                              (516) 706-0248 (fax)

                              *Attorneys for Plaintiffs*